UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLUE DOLPHIN CHARTERS, LTD., <br><br> Plaintiff, <br><br> v. <br><br> KNIGHT & CARVER YACHTCENTER, INC., <br><br> Defendant. | Civil No. 11-cv-565-L(WVG) <br><br> **ORDER GRANTING MOTION TO DISMISS [DOC. 6]** |

On March 22, 2011, Plaintiff Blue Dolphin Charters, LTD., a Hawaii corporation, commenced this breach-of-contract and tort action against Defendant Knight & Carver Yachtcenter, Inc., a California corporation. Plaintiff's complaint is based on the allegation that the underwing of a the catamaran ("Vessel") constructed by Defendant was not built to the specifications required by the terms of the Vessel Construction Agreement. Defendant now moves to dismiss Plaintiff's First, Second, Fourth, and Sixth Causes of Action. Plaintiff opposes.

The Court found this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1). (Doc. 13.) For the following reasons, the Court **GRANTS** Defendant's motion to dismiss.

## I.  BACKGROUND

Plaintiff offers sightseeing, scuba diving, and snorkel tours to tourists from its two sailing catamarans off of the Na Pali Coast in the Hawaiian Island of Kauai.  (Compl. ¶ 6 [Doc. 1].) Defendant is a full-service marine facility that specializes in the repair and refit of "megayachts" and advertises itself as a "premier luxury yacht builder."  (*Id.* ¶ 7.)  Plaintiff alleges that it chose Defendant to build the Vessel based in large part on Defendant's reputation as having "an experienced staff of master craftsmen in all marine trades, as well as on-site marine engineering professionals and naval architects."  (*Id.*)

In 1998, it was agreed that Defendant would co-design the Vessel with a design-and-engineering company.  (Compl. ¶ 8.)  Thereafter, Plaintiff and Defendant entered into a written "Vessel Construction Agreement" in which Defendant was to build for Plaintiff "one 62' x 25' Twin Diesel, 49-passenger, U.S. Coast Guard Inspected, Excursion Motorsailer Catamaran" that would be designed to withstand "the perils of the open ocean off the Na Pali Coast" for $385,000.00.  (*Id.* ¶ 9.)  Among the terms agreed upon by the parties was that Defendant would "construct the Vessel in accordance with plans and specifications as agreed to by the parties." (*Id.*)  The agreement also expressly warranted that "construction will be in accordance with the designs and specifications" designated by the parties, and that "sound shipbuilding practices will be followed throughout construction and that workmanship will be free from defects for a period of twelve (12) months from commencement of the warranty period for the Vessel."  (*Id.* ¶ 10.)

On or about December 8, 1999, Plaintiff took possession of the Vessel, which was commissioned as the *Blue Dolphin*, and transported it to Kauai.  (Compl. ¶ 11.)

Leading up to and during 2010, Plaintiff learned of "an alarming number of demastings of sailing vessels in the Hawaiian Islands resulting in injuries and/or deaths to passengers." (Compl. ¶ 12.)  As a result, the United States Coast Guard began inspecting sailing vessels in Hawaii.  (*Id.*)  In anticipation of the inspection, Plaintiff retained a marine surveyor to pre-inspect its Vessel.  (*Id.*)

On or about April 10, 2010, the marine surveyor discovered that "the underwing beneath the [Vessel's] mast step was flexing and causing her entire sail rig to move in a dangerous

2

11cv565

manner." (*Id.* ¶ 13.) To investigate the problem, "the [Vessel's] mast was removed by crane whereupon it was discovered that the underwing was not built to the specifications called for by the terms of the Vessel Construction Agreement." (*Id.*) As a result, Plaintiff alleges that the Vessel was taken out of service and will be forced to make over $160,000.00 in repairs. (*Id.*) It also alleges that "[d]ue to the latency of the defect, [Plaintiff] was blamelessly ignorant of its rights and could not have discovered the facts giving rise to the claims set forth herein until the vessel was dismantled and inspected." (*Id.* ¶ 14.)

On March 22, 2011, Plaintiff filed a complaint in this Court asserting six causes of action: (1) breach of contract; (2) fraud; (3) negligence; (4) negligent interference with prospective business advantage; (5) negligent misrepresentation; and (6) breach of warranty. On May 31, 2011, Defendant moved to dismiss Plaintiff's First (breach of contract), Second (fraud), Fourth (negligent interference with prospective business advantage), and Sixth (breach of warranty) Causes of Action. (Doc. 6.) Plaintiff opposes. (Doc. 10.)

## II.   LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). All material allegations in the complaint, "even if doubtful in fact," are assumed to be true. *Id.* The court must assume the truth of all factual allegations and must "construe them in light most favorable to the nonmoving party." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002); *see also Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir. 1996).

As the Supreme Court has explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007). Instead, the allegations in the complaint "must be

enough to raise a right to relief above the speculative level." *Id.* at 1964-65. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, courts may consider documents specifically identified in the complaint whose authenticity is not questioned by parties. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superceded by statutes on other grounds). Moreover, courts may consider the full text of those documents, even when the complaint quotes only selected portions. *Id.* The court may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

**III.  DISCUSSION**

    **A.  Plaintiff's First Cause of Action for Breach of Contract Is Barred by the Statute of Limitations.**

Defendant argues that the four-year statute of limitations contained in California Commercial Code § 2725 applies here. (Def.'s Mot. 1:26–2:4 [Doc. 6].) In response, Plaintiff argues that the four-year statute of limitations contained in California Code of Civil Procedure § 337 applies here. (Pl.'s Opp'n 3:3–8 [Doc. 10].) Actions involving the sale of goods are subject to the four-year statute of limitations contained in the California Commercial Code § 2725, rather than the more general four-year limitations period for an action on a contract contained in the California Code of Civil Procedure § 337. *Jack Heskett Lincoln-Mercury, Inc. v. Metcalf*, 158 Cal. App. 3d 38, 42 (1984). Consequently, in order to determine which limitations period applies, the Court must first determine whether the agreement in this case is a contract for the sale of goods.

To determine whether a contract is one for the sale of goods or services, the court must

look to the "essence" of the agreement. *Filmservice Labs., Inc. v. Harvey Bernhard Enters., Inc.*, 208 Cal. App. 3d 1297, 1305 (1989). If service predominates, the incidental sale of goods does not alter the basic nature of the transaction for services. *Id.* However, looking to the essence of the contract, the Supreme Court has suggested that contracts relating to the construction of or supply of materials to a ship are governed by state contract law, and in particular, the Uniform Commercial Code. *E. River. S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872 n.7 (1986) (citing *N. Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 127 (1919)). This strongly suggests that a contract for the construction of a ship is for the sale of a good. *See id.*

This case involves a contract related to the construction of a ship—specifically, a catamaran. And though the Vessel Construction Agreement used the word "services" in its introduction, the purpose of the contract is to "construct and deliver to [Plaintiff] one 62' x 25" [sic] TWIN DIESEL 49 PASSENGER U.S. COAST GUARD INSPECTED EXCURSION MOTORSAILER CATAMARAN described in the Designs and Specifications." (Vessel Construction Agreement ¶ 1 [Doc. 1-1].) In short, the "essence" of the contract is to construct and deliver a good, a ship, and in this case, the Vessel. *See E. River S.S. Corp.*, 249 U.S. at 872 n.7. Therefore, the contract here is governed by the four-year statute of limitations contained in California Commercial Code § 2725. *See Jack Heskett Lincoln-Mercury*, 158 Cal. App. 3d at 42.

Plaintiff also argues that the discovery rule applies to delay the accrual date for its breach-of-contract cause of action. (Pl.'s Opp'n 4:12–19.) Generally, a cause of action accrues at "the time when the cause of action is complete with all of its elements." *Norgat v. Upjohn Co.*, 21 Cal. 4th 383, 389 (1999). An exception to this general rule is the "discovery rule," which "postpones the accrual of a cause of action until the plaintiff discovers, or has reason to discover the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). This exception, however, does not apply to breach-of-contract actions governed by the California Commercial Code. Cal. Com. Code § 2725(2); *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 132 (2008). "Before the enactment of section 2725, California applied

the discovery rule to determine accrual date." *Cardinal Health 301, Inc.*, 169 Cal. App. 4th at 132. However, when California "adopted the [Uniform Commercial Code] version of the statute of limitations, it expressed the clear intent to follow the uniform rule which established tender of delivery as the accrual date." *Id.* Because the contract is governed by California Commercial Code § 2725 and not California Civil Procedure Code § 337, the discovery rule does not apply. *See* Cal. Com. Code § 2725(2).

In sum, given that the limitations period began to accrue when Defendant delivered and Plaintiff took possession of the Vessel on December 8, 1999, the statute of limitations period expired on December 9, 2003. Plaintiff commenced this action on March 22, 2011, more than 7 years after the limitations period expired. Therefore, Plaintiff's First Cause of Action for breach of contract is barred by the statute of limitations. *See* Cal. Com. Code § 2725(1)–(2).

**B.     Plaintiff's Second Cause of Action for Fraud Is Barred by the Economic Loss Rule.**

The economic loss rule "prevent[s] the law of contract and the law of tort from dissolving one into the other." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (internal quotations marks omitted). The rule generally bars tort actions for contract breaches, thereby limiting contracting parties to contract damages. *Aas v. Super. Ct.*, 24 Cal. 4th 627, 643 (2000). It precludes recovery for "purely economic loss due to disappointed expectations," unless the plaintiff "can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter*, 34 Cal. 4th at 988. In other words, "[a] person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." *Aas*, 24 Cal. 4th at 643. "[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Robinson Helicopter*, 34 Cal. 4th at 989.

Plaintiff argues that the duties Defendant violated were duties owed under "professional marine engineering standards" and naval architecture certifications and licenses. (Pl.'s Opp'n 7:12–15.) However, Plaintiff fails to provide any legal authority that shows these are also

independent duties that exist under California tort law. Moreover, damages available under tort theories do not include economic loss, such as "damages for inadequate value, costs of repair and replacement of the defective product[,] or consequent loss of profits—without any claim of personal injury or damages to other property." *Jimenez v. Super. Ct.*, 29 Cal. 4th 473, 482 (2002). But here, Plaintiff claims that the resulting damages are future expenditures of money to correct and repair defects, and lost profits. (Pl.'s Opp'n 8:23–28.) In short, Plaintiff only claims economic loss. Therefore, Plaintiff's Second Cause of Action for fraud is barred by the economic loss rule.[1]

### C. Plaintiff's Fourth Cause of Action for Negligent Interference with Prospective Business Advantage Is Insufficiently Pled.[2]

"The tort of intentional or negligent interference with prospective economic advantage imposes liability for improper methods of disrupting or diverting the business relationship of another which fall outside the boundaries of fair competition." *San Jose Const., Inc. v. S.B.C.C., Inc.*, 155 Cal. App. 4th 1528, 1544 (2007) (internal quotations marks omitted). "[It] protects the same interest in stable economic relationships as does the tort of interference with contract, though interference with prospective advantage does not require proof of a legally binding contract." *Pac. Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

//
//
//
//
//

---

[1] Though the Court dismisses Plaintiff's Second Cause of Action for fraud on the grounds that it is barred by the economic loss rule, the Court also notes that there are serious flaws in Plaintiff's attempt to meet the heightened requirements of Federal Rule of Civil Procedure 9(b), particularly because Plaintiff alleges fraud against a corporation.

[2] The Court uses the language "negligent interference with prospective business advantage" and "negligent interference with prospective economic advantage" interchangeably.

> The tort of negligent interference with prospective economic advantage is established where a plaintiff demonstrates that (1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship.

*N. Am. Chem. Co. v. Super. Ct.*, 59 Cal. App. 4th 764, 786 (1997). An allegation that the defendant interfered with "speculative" future customers is insufficient.[3] *Roth v. Rhodes*, 25 Cal. App. 4th 530, 546 (1994) (discussed in context of a cause of action for intentional interference with prospective business).

In the complaint, Plaintiff identifies the "general public" and "tourists" as third parties with whom Plaintiff had economic relationships with. However, Plaintiff must allege, among other things, the existence of a *specific* economic relationship between it and one or more third parties. *See Silicon Knights, Inc. v. Crystal Dynnamics, Inc.*, 983 F. Supp. 1303, 1313 (N.D. Cal. 1997). Relationships with the "general public" and "tourists" do not satisfy the specificity requirement. Consequently, the complaint fails to allege a specific economic relationship between Plaintiff and a third party, and Plaintiff appears to concede that it failed to allege any specific economic relationship with a third party (Pl.'s Opp'n 11:10–17). Therefore, Plaintiff's Fourth Cause of Action for negligent interference with prospective business advantage is insufficiently pled.

### D. Plaintiff's Sixth Cause of Action for Breach of Warranty is Barred by the Statute of Limitations.

As discussed above, the contract at issue here is governed by the California Commercial

---

[3] The torts of intentional interference with economic advantage and negligent interference with prospective economic advantage are substantially similar. The primary difference between the two is that the former is grounded in the defendant's intentional act, whereas the latter is grounded in the defendant's negligence. *See Pac. Gas & Electric Co.*, 50 Cal. 3d at 1126 (presenting the elements for intentional interference with economic advantage).

Code, which imposes a four-year statute of limitations for breach-of-contract and breach-of-warranty actions. *See* Cal. Com. Code § 2725. Under California Commercial Code § 2725, "[a] breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Cal. Com. Code § 2725(2). In other words, "the general limitations rule for a breach of warranty cause of action *is* four years from the date the goods are delivered (regardless of the date the buyer discovers the breach), *unless* the 'warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance . . .'" *Cardinal Health 301*, 169 Cal. App. 4th at 129 (emphasis in original) (quoting Cal. Com. Code § 2725(2)).

Here, the Vessel Construction Agreement contains a section that warrants that the Vessel "will be free from defects for a period of twelve (12) months from commencement of the warranty period" and that the hull will "be free from structural defects, including blisters, due workmanship for a period of 60 months (5 years)." (Vessel Construction Agreement ¶ 8.2.) Because the parties explicitly extended the warranty for 12 months, the limitations period began to accrue 12 months after delivery. Thus, under the general-defects warranty, the statute of limitations period expired on December 9, 2004.

Plaintiff does not allege that the underwing of the Vessel is associated in any way with the hull. However, assuming, for the sake of argument, that it is associated with the hull in some way to be covered by the hull-structural-defects warranty, then the limitations period began to accrue 60 months after delivery. Thus, under the hull-structural-defects warranty, the statute of limitations period expired on December 9, 2008.

Given that Plaintiff commenced this action on March 22, 2011, Plaintiff's Sixth Cause of Action for breach of warranty is also barred by the statute of limitations under both warranties contained in the Vessel Construction Agreement.

//

//

## IV.   CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS** Defendant's motion to dismiss.  (Doc. 6.) Accordingly, the Court **DISMISSES** Plaintiff's First, Second, Fourth, and Sixth causes of action.  If Plaintiff decides to file an amended complaint or amend any of its causes of action, it must do so by **November 21, 2011**.

**IT IS SO ORDERED.**

DATED: November 3, 2011

M. James Lorenz
United States District Court Judge

COPY TO:

HON. WILLIAM V. GALLO
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

10

11cv565