UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLUE DOLPHIN CHARTERS, LTD., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KNIGHT & CARVER YACHTCENTER, ) <br> INC., ) <br> ) <br> Defendant. ) | Civil No. 11-cv-565-L(WVG) <br> <br> **ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND [DOC. 20]** |

    This action arises from Plaintiff Blue Dolphin Charters, LTD's allegation that the underwing of a catamaran constructed by Defendant Knight & Carver Yachtcenter, Inc. was defective and not built to comply with applicable regulations.  Defendant now moves to dismiss the Amended Complaint, which asserts a single cause of action for fraud.  Plaintiff opposes.

    The Court found this motion suitable for determination on the papers submitted and without oral argument.  *See* Civ. L.R. 7.1(d.1).  (Doc. 21.)  For the following reasons, the Court **GRANTS WITHOUT LEAVE TO AMEND** Defendant's motion to dismiss.

//

//

## I. BACKGROUND

Plaintiff offers sightseeing, scuba diving, and snorkel tours to tourists from its two sailing catamarans off of the Na Pali Coast in the Hawaiian Island of Kauai. (Am. Compl. ¶ 6 [Doc. 19].) Defendant is a full-service marine facility that specializes in the repair and refit of "megayachts," and advertises itself as a "premier luxury yacht builder" with "an experienced staff of master craftsmen in all marine trades, as well as on-site marine engineering professionals and naval architects." (*Id.* ¶ 7.)

In 1998, "[P]laintiff commissioned [Defendant] to co-design, construct, and equip a 62' x 25' catamaran sailing vessel that was in full compliance with all applicable Coast Guard regulations under 46 Code of Federal Regulations ('CFR'), Subchapter T-Small Passenger Vessels (Under 200 Gross Tons)." (Am. Compl. ¶ 9.) Plaintiff alleges that Defendant "had the legal duty under federal regulation to meet these requirements." (*Id.* ¶ 12.)

On or about December 8, 1999, Plaintiff took possession of the catamaran, which was commissioned as the *Blue Dolphin II*, and transported it to Kauai. (Am. Compl. ¶ 13.)

Leading up to and during 2010, Plaintiff learned of "an alarming number of demastings of sailing vessels in the Hawaiian Islands resulting in injuries and/or deaths to passengers." (Am. Compl. ¶ 14.) As a result, the United States Coast Guard began inspecting sailing vessels in Hawaii. (*Id.*) In anticipation of the inspection, Plaintiff retained a marine surveyor to pre-inspect its vessels, including the *Blue Dolphin II*. (*Id.*)

On or about April 10, 2010, the marine surveyor discovered that "the underwing beneath the Blue Dolphin II's mast step was flexing and causing her entire sail rig to move in a dangerous manner." (Am. Compl. ¶ 15.) To investigate the problem, Plaintiff alleges that "the Blue Dolphin II's mast was removed by crane whereupon it was discovered that the underwing did not comply with the structural design requirements outlined in Title 46 CFR Subchapter T." (*Id.*) As a result, Plaintiff alleges that the catamaran was taken out of service and that it will be forced to make over $160,000.00 in repairs. (*Id.* ¶ 16.) It also adds that "[d]ue to the latency of the defect, [Plaintiff] was blamelessly ignorant of its rights and could not have discovered the facts giving rise to the claims set forth herein until the vessel was dismantled and inspected."

(*Id.* ¶ 17.)

On March 22, 2011, Plaintiff filed a complaint in this Court asserting six causes of action: (1) breach of contract; (2) fraud; (3) negligence; (4) negligent interference with prospective business advantage; (5) negligent misrepresentation; and (6) breach of warranty. On May 31, 2011, Defendant moved to dismiss Plaintiff's First (breach of contract), Second (fraud), Fourth (negligent interference with prospective business advantage), and Sixth (breach of warranty) Causes of Action. (Doc. 6.) The Court granted the motion, but gave Defendant leave to amend its complaint. (Doc. 14.)

On December 8, 2011, Plaintiff filed an Amended Complaint asserting a single cause of action for fraud. (Doc. 19.) Defendant now moves to dismiss the Amended Complaint. (Doc. 20.) Plaintiff opposes. (Doc. 22.)

## II.   LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all allegations of material fact as true and construe them in light most favorable to the nonmoving party. *Cedars-Sanai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Material allegations, even if doubtful in fact, are assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks omitted). In fact, the court does not need to accept any legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, — , 129 S. Ct. 1937, 1949 (2009)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Instead, the

allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, documents specifically identified in the complaint whose authenticity is not questioned by parties may also be considered. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superceded by statutes on other grounds). Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions. *Id.* It may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

**III.   DISCUSSION**

The economic loss rule "prevent[s] the law of contract and the law of tort from dissolving one into the other." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (internal quotations marks omitted). The rule generally bars tort actions for contract breaches, thereby limiting contracting parties to contract damages. *Aas v. Super. Ct.*, 24 Cal. 4th 627, 643 (2000). It precludes recovery for "purely economic loss due to disappointed expectations," unless the plaintiff "can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter*, 34 Cal. 4th at 988. In other words, "[a] person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." *Aas*, 24 Cal. 4th at

643. "[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Robinson Helicopter*, 34 Cal. 4th at 989.

In this case, there is no harm above and beyond a broken contractual promise. Plaintiff argues that Defendant committed fraud "when it represented to the plaintiff that the Blue Dolphin was built according to Coast Guard regulations and the design specifications." (Pl.'s Opp'n 5:7–10 [Doc. 22].) However, these are duties that arise from the construction agreement between the parties. That agreement required Defendant to "co-design, construct and equip a 62' x 25' catamaran sailing vessel that was *in full compliance with all applicable Coast Guard regulations* . . . ." (Am. Compl. ¶ 9 (emphasis added); *see also* Vessel Construction Agreement ¶ 2 [Doc. 1-1].) Thus, Defendant's failure to meet these requirements does not violate a duty independent of the contract. *See Robinson Helicopter*, 34 Cal. 4th at 989.

Plaintiff also argues that its circumstances in this case are the same as those in *Robinson Helicopter*, and in particular, Defendant's conduct is "virtually indistinguishable." (Pl.'s Opp'n 4:16, 5:6–7 [Doc. 22].) But Plaintiff is mistaken. In *Robinson Helicopter*, a helicopter manufacturer purchased sprag clutches manufactured by the defendant to use in its helicopters. *Robinson Helicopter*, 34 Cal. 4th at 985. As required by the Federal Aviation Administration ("FAA"), the defendant issued a certificate with each delivery affirming that the sprag clutches were ground to a particular level of hardness, described as "50/55 Rockwell." *Id.* This arrangement continued for over twelve years before the defendant delivered sprag clutches at a different level of hardness—"61/63 Rockewell"—while continuing to issue written certificates that the sprag clutches were 50/55 Rockwell. *Id.* at 985-86. Eventually, the California Supreme Court concluded that the economic loss rule did not bar the helicopter manufacturer's fraud and intentional misrepresentation claims with respect to the defendant's provision of false certificates of conformance. *Id.* at 988.

//
//
//

Unlike this case, *Robinson Helicopter* involved a non-contractual duty—the defendant's duty to provide certificates as required by the FAA. *Robinson Helicopter*, 34 Cal. 4th at 985. The defendant also made unequivocal affirmative misrepresentations twelve years after entering into the contractual relationship. *Id.* at 986. Here, Defendant did not make such unequivocal affirmative misrepresentations. Plaintiff alleges that Defendant "stated . . . that the vessel was being built according to all applicable Coast Guard Regulations of Title 46 CFR, Sub-Chapter T, that it met the required hull structural inspections, that it had obtained the Certificate of Inspection properly, and that the vessel met all professional industry standards in all respects," and that these representations were false. (Am. Compl. ¶ 19–20.) However, it appears after an inspection by a marine inspector assigned by the Officer in Charge, Marine Inspection ("OCMI"), as required by 46 C.F.R. § 176.400(b), Defendant successfully obtained certification. And this certification is issued by the U.S. Coast Guard, and not by Defendant. *See* 46 C.F.R. § 176.105. Further departing from the circumstances of *Robinson Helicopter*, these representations were made in the weeks leading up to Plaintiff taking possession of the catamaran and not after. Simply put, the factual circumstances in *Robinson Helicopter* differ from those here.

Finally, damages available under tort theories do not include economic loss, such as "damages for inadequate value, costs of repair and replacement of the defective product[,] or consequent loss of profits—without any claim of personal injury or damages to other property." *Jimenez v. Super. Ct.*, 29 Cal. 4th 473, 482 (2002). But here, Plaintiff seeks costs of repair, damages for loss of use and lost profits, consequential and incidental damages, as well as exemplary and punitive damages. (Am. Compl. 7.) Aside from the exemplary and punitive damages, Plaintiff only claims economic loss for a defective product.

In sum, this case does not involve tortious conduct separate from the breach itself. *See Robinson Helicopter*, 34 Cal. 4th at 990. Therefore, Plaintiff's cause of action for fraud is barred by the economic loss rule.

//
//

## IV.     CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS WITHOUT LEAVE TO AMEND** Defendant's motion to dismiss.  *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("[A] district court may dismiss without leave where . . . amendment would be futile.").  (Doc. 20.)

**IT IS SO ORDERED.**

DATED: April 6, 2012

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. WILLIAM V. GALLO
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL